LUCILLE ANDERSON, Appellee, v. O. A. E. ENGWALL, Appellant.

Judgments: LIENS UPON REAL ESTATE: SATISFACTION. The fact that a judgment creditor applied a payment upon an open account held by him against the debtor, under an arrangement with the trustee of the judgment debtor, and executed a quit-claim deed to land held by the trustee under a trust arrangement to which he was not a party, did not release other land from the lien of the judgment although he knew that the debtor had sold and conveyed the same.

Same: MARSHALLING OF ASSETS. The further fact that the judgment creditor also released notes held by the trustee, the proceeds of the sale of the land, did not entitle a purchaser of land from the debtor, which had not been transferred to the trustee and was still subject to the lien of the judgment, to a marshalling of assets; especially as other creditors interested in the trust were not parties to the action.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

FRIDAY, NOVEMBER 27, 1914.

ACTION in equity, in which plaintiff seeks to quiet title to real estate as against a judgment alleged by appellant to be a lien on such real property. There was a decree for plaintiff. Defendant appeals.—*Reversed.*

*John L. Gillespie,* for appellant.

*T. L. Sellers* and *J. H. Anderson,* for appellee.

PRESTON, J.—The property in controversy consists of three acres in the town of Altoona, Polk county, and is referred to in the record as the city property. Plaintiff purchased the property of one L. E. Sampson, and paid for it. The defendant had a judgment against Sampson, and caused an execution to issue and be levied upon the three acres in controversy. Sampson owned the city property at the time the defendant obtained judgment against him. Sampson owned farm land near Altoona, which had been conveyed by him to one Hextell in trust prior to the date upon which defendant obtained his judgment. Plaintiff was then claiming that the judgment was not a lien upon the land because of the trust deed. Plaintiff does not deny that defendant's judgment was at one time a lien upon the property she purchased, but says it is not now a lien, because, as she alleges, that one Hextell was chosen by Sampson trustee for certain lands and property of said Samp-

1. JUDGMENTS: liens upon real estate: satisfaction.

son, and that said trustee did, in fact, pay to the defendant's attorney the amount of the judgment, interest, attorney's fees, and costs, and that defendant applied some of the money to the payment of costs, and applied the balance on other claims, and released from the lien of said judgment the other lands of Sampson, knowing at the time of said release that plaintiff had purchased the premises and paid therefor.

The claim of the defendant is that on April 9, 1913, the date when this controversy arose, in addition to his judgment he had an open account against Sampson, consisting of a note of about $125, not yet due, and an open running account of about $11, making a total of $136; that on April 9, 1913, Hextell made a payment to defendant of about $127, which payment was made upon the express understanding and agreement between defendant and Hextell that the same was to be used, first, in paying the costs of $10.65 due on the judgment, and the balance was to be applied towards the payment of the open account, and that no part of said sum was to be used in paying off the judgment, except the item of $10.65 costs; that by reason of said agreement defendant was not bound or obligated to apply any of the money so paid upon said judgment, except the item of costs before stated, and that the said judgment and the lien created against said city property should be in no way affected by said transaction.

Prior to the time this controversy arose, Sampson was a man of considerable property, owning farm lands in Polk county, city property in Des Moines and Altoona, besides owning considerable real estate outside of Iowa. On and prior to June 20, 1912, Mr. Sampson was heavily indebted to numerous creditors, one of whom was the defendant, and on that date Sampson deeded a part of his real estate to Mr. Hextell, who agreed to act as trustee for the property deeded to him, agreeing to sell it, pay off the incumbrances, and pay the proceeds to certain parties named in a trust agreement executed by some of the larger creditors, Sampson, and Hextell. The three acres of land in controversy was not conveyed to the

trustee, but was still held by Sampson until sold by him to plaintiff March 27, 1913. It appears that Sampson also had personal property, and it is not shown that this was turned over to Hextell, the trustee. Defendant's judgment was rendered July 31, 1912, some two or three weeks after the trust deed was executed. The defendant at no time agreed to the trust arrangement and did not participate in any of the meetings of the creditors. The trust arrangement was not under any statute, and it is insisted by defendant that it was not in effect a general assignment for the benefit of all creditors.

The three-acre tract in controversy sold for $900, and was worth more than defendant's judgment. The evidence is undisputed that on April 9, 1913, Mr. Hextell came to defendant and told him that he would pay $127.94, which was about the amount of the judgment, with interest and costs, provided defendant would satisfy said judgment in full and, in addition thereto, execute a quitclaim deed, quitclaiming and releasing any and all right that defendant might have in the farm property which had been conveyed to and was held in trust by Hextell. Defendant told Hextell that he would accept the same in full satisfaction of the judgment, or that Hextell could go to the clerk and pay it there and satisfy the judgment, but refused to execute a quitclaim deed covering the farm property. Defendant knew that his judgment was a lien against the three acres in question, and informed Mr. Hextell that so far as the judgment was concerned it was absolutely secure because of this lien. Hextell was also informed by defendant that he was contemplating making an effort to collect the open account by instituting an attachment case, and expected to attach the farm property held by Hextell under the trust deed or garnishee the trustee.

After the defendant refused to execute a quitclaim deed, Hextell agreed to pay defendant the amount of the check which he had prepared and brought with him, and that defendant might apply all of said sum on his open account against Sampson, except that $10.65 of said money should be used in

paying the costs on the judgment, provided defendant would execute a quitclaim deed covering the farm land. Defendant accepted that proposition and accepted the money and executed a quitclaim deed covering the farm land, paid the costs of the judgment, amounting to $10.65, and the balance, $117.29, was applied upon the open account, according to the agreement. The check, as first presented, contained an indorsement that it was to satisfy the judgment; but when defendant refused to accept it in that manner a new check was made, without such indorsement. Hextell insisted that the costs in the judgment, amounting to $10.65, should be paid, and this was finally assented to by defendant. Thereafter the owner of the property in controversy refused to pay the judgment, and execution was taken out and a levy made on such property, when this action was brought.

The situation, then, on April 9, 1913, when the payment was made by Hextell to defendant, was that the city property stood in the name of Sampson, against whom defendant had a judgment. The city property was never conveyed to any trustee. Defendant was not consulted about the trust agreement until after it was made, and he at no time thereafter signed the trust agreement, nor did he ever consent to it. At the time defendant obtained his judgment he had the open account against Sampson outstanding and unsecured, and at the date of the judgment Sampson had standing in his own name certain real estate, including the three-acre piece in Altoona, so that the judgment became a valid lien against the city property on that date, July 31, 1912. As before stated, Sampson sold the property to plaintiff after the judgment was obtained.

It seems that prior to April 9, 1913, Mr. Hextell, the trustee, had contracted to sell the Polk county farm land, but the purchaser was insisting that a quiclaim deed be procured by Hextell from the defendant. In fact, the purchaser wanted Hextell to obtain quitclaim deeds from all Sampson's creditors, and he had obtained quitclaim deeds from other creditors

of Sampson. As stated, after some negotiations, the agreement was made on April 9th between defendant and Hextell that defendant would execute a quitclaim deed as to the farm land if he were paid the amount of the check and it was applied according to the agreement. It was upon that agreement, and nothing else, that the defendant took the money and then executed the quitclaim deed to the farm property. By so doing defendant retained his lien against the three-acre tract of city property under his judgment against Sampson.

As before stated, there is no dispute as to these facts. Defendant was simply standing upon his rights, and the only question is: Did defendant have a right to protect himself, and ask for and receive some consideration, before he would execute a quitclaim deed to the farm property. We think he clearly had the right to do so. It should be remembered that this is not an action in bankruptcy, or under the statutes pertaining to general assignments for the benefit of creditors. If it were so, different questions might possibly arise.

Plaintiff cannot come in and compel defendant to credit on the judgment the consideration which he received from Mr. Hextell, when the express agreement was that he was to credit it upon the open account, and not upon the judgment. Defendant has quitclaimed all his interest in the farm land, and has given credit upon the open account for $117.29. He gave up all the rights he had against the farm land, or his right to make his claim out of the farm land by suitable action, and satisfied his open account to the extent stated. The court may not make a new contract for defendant, and compel him to apply this payment on the judgment, contrary to the agreement of the parties. The three acres of city property has nothing to do with the trust arrangement between Sampson and Hextell. If it be considered that the trust arrangement was in the nature of assignment proceedings, then only a part of the property was assigned, and under such circumstances the provisions of the statute with reference to general assignments would not apply. There was no relationship, so far as

this case is concerned, between Hextell, the defendant, and the judgment debtor. Hextell was anxious to clear the title to the farm lands. That seems to have been the primary object of his negotiations with defendant.

The plaintiff has advanced no satisfactory theory upon which her claim may be sustained. She urges that the equitable doctrine of marshaling assets applies to the circumstances of this case, and contends that the defendant should not have released the $9,000 of notes in the hands of the trustee, being, as we understand it, a part of the proceeds of the sale of the land conveyed by trust deed; that, having done so, defendant may not levy upon and seek to enforce his claim against the three acres purchased by the plaintiff. But, under the circumstances, we think the doctrine does not apply. None of the other creditors are parties to this action; and, as before stated, the three acres in controversy were not conveyed to the trustee, and the defendant did not at any time assent to the trust arrangement.

2. SAME: marshalling of assets.

It is said further by plaintiff that before the money was paid to the defendant, as before stated, it was agreed and understood between Sampson and Hextell and the plaintiff that the money should be paid to the defendant in satisfaction of the judgment; and this is what Hextell attempted to do, upon conditions stated, but defendant refused. Such an arrangement between those three parties would not bind the defendant.

We conclude, therefore, that the decree of the trial court was erroneous, and it is reversed and remanded for a decree in harmony with this opinion, or defendant may have a decree in this court, at his option. It is said in argument that a written stipulation between the parties has been made that, if defendant's lien be sustained, plaintiff may pay it off and have a decree. The decree may so provide, if the parties so agree.— *Reversed.*

LADD, C. J., and EVANS and WEAVER, JJ., concur.